IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RENE SOLIS, | § | |
|         Plaintiff, | § | |
| | § | |
| v. | § | No. 3:20-cv-00765-E (BT) |
| | § | |
| J. BARBER, et al. | § | |
| | § | |
|         Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Rene Solis, a federal prisoner, filed this *pro se* civil rights action against various defendants raising causes of action under 42 U.S.C. § 1983. *See* ECF No. 3. The Court granted Solis leave to proceed *in forma pauperis* and withheld service subject to screening her complaint. ECF No. 6. The Court also issued a Magistrate Judge's Questionnaire (MJQ) to Solis so that she could clarify her claims. *See* ECF Nos. 14, 15. Solis's response to the MJQ are part of her pleadings. *See Swaringen v. Bell*, 2019 WL 2870051, at *3 (N.D. Tex. June 19, 2019), *rep. and rec adopted*, 2019 WL 2869825 (N.D. Tex. July 3, 2019). Having received Solis's response to the MJQ and having screened the complaint, the undersigned recommends that the Court dismiss this action under 28 U.S.C. §§ 1915A and 1915(e)(2)(B) for failure to state a claim upon which relief can be granted.

## Background

Solis is a transgender individual who identifies as a woman and "looks female to any naked eye." *See* ECF No. 15 at 2. On January 13, 2019, she was a federal pretrial detainee housed in the Dallas County Jail and assigned to the Special Custody Unit, which is a "restrictive housing/unit." *Id.* at 1. Prison rules and regulations require that all inmates within the special Custody Unit be handcuffed and supervised. *Id.*

At 3:00 p.m. on January 13, 2019, Solis was waiting for her turn to see "medical." ECF No. 3 at 5. Pursuant to prison rules, she was handcuffed. *Id.* Defendant Barber was responsible for Solis's "reasonable safety/health" while she was handcuffed. ECF No. 15 at 1. Defendant Barber left Solis in the hall outside of the medical department to have a conversation with someone in the medical nurse's station, leaving Solis "defenseless and vulnerable." ECF No. 3 at 5. While Solis was alone, a "high-security" male inmate who was not handcuffed or supervised assaulted Solis, causing physical injury. *See* ECF No. 3 at 5; ECF No. 15 at 1. The male inmate yelled "Stupid faggot!" at Solis before hitting her violently in the face and causing her to fall to the ground. *See* ECF No. 13 at 1. An unidentified defendant officer ("John Doe 1") who was responsible for overseeing Solis's attacker left him uncuffed and unsupervised in violation of prison policy. ECF No. 15 at 1.

Solis sues both Defendant Barber and the unidentified officer in charge of the high-security inmate, claiming that both officers failed to

protect her from the assault. She claims that "all employees failed to properly identify" her as transgender and provide her with the requisite protection. ECF No. 15 at 4. She claims that this failure to protect her from assault was negligent and evinces deliberate indifference. *See* ECF No. 15 at 3.

Defendant Wideman—Defendant Barber's supervisor—is also liable, Solis contends, for failing to properly supervise Defendant Barber and to alert him that Solis required more "reasonable safety protection" and that all inmates in the Special Custody Unit should have been handcuffed and supervised. *Id.* at 6. Defendant Wideman should have assigned another officer familiar with "transgender custody/supervision" to escort Solis, and the failure to do so was "negligent supervision…against [a] transgender." *Id.*

After the assault, Defendant Cox allegedly conspired with "all investigating officers" and failed to respond to Solis's grievance in violation of her First Amendment right to access the courts. ECF 15 at 3. Defendants also violated Solis's due process rights by suppressing evidence—including eyewitness statements, a video camera, and medical reports—related to the assault. *See id.*

Solis also sues Sheriff Marian Brown in both her individual and official capacities because Sheriff Brown: (1) failed to ensure that her subordinate officers were properly trained, (2) did not provide "full information on Solis's transgender status," (3) acted with deliberate

indifference in failing to ensure that Solis was properly transported, and (4) hired negligent and discriminatory employees. *See id.* at 7.

Solis also sues the United States Marshal under the Federal Tort Claims Act (FTCA) for engaging in a civil conspiracy "against [Solis's] transgender status" by placing her in the supervision of Dallas County Jail employees without notification that she was transgender. *See id.* at 8.

Finally, Solis sues the male inmate that assaulted her, as well as an unknown Defendant ("John Doe 2") who was responsible for assuring that Defendant Barber and other officers did their jobs correctly. *See* ECF No. 3 at 3-4.

## Legal Standards

Solis's complaint is subject to preliminary screening under 28 U.S.C. § 1915A. That section provides in pertinent part:

> The court shall review . . . as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity [and] [o]n review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(a) and (b).

Under 28 U.S.C. § 1915(e), a district court may also summarily dismiss a complaint filed *in forma pauperis* if it concludes the action is: (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3)

seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

To state a claim upon which relief may be granted, a plaintiff must "plead enough facts to state a claim to relief that is plausible on its face[,]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level[.]" *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## Analysis

A.    <u>Solis fails to state a failure-to-protect claim against Defendant Barber and John Doe 1.</u>

Because she was a pretrial detainee on the date of the alleged assault, Solis's failure-to-protect claim arises under the Due Process Clause of the Fourteenth Amendment. *See Jacobs v. West Feliciana Sheriff's Dep't*, 228 F.3d 388, 393 (5th Cir. 2000). An inmate's constitutional rights are violated when a prison official demonstrates "deliberate indifference" to a substantial risk of serious harm. *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 650 (5th Cir. 1996) ("[T]he State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human

needs, including medical care and protection from harm, during their confinement.").

Specific to Solis's claims here, prison officials have a duty to protect inmates from violence at the hands of other prisoners. *Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006). "Prison officials must guard against current threats, as well as sufficiently imminent dangers that may cause harm in the future, but not every injury caused by another prisoner gives rise to constitutional liability." *Wood v. Barrera*, 2020 WL 7121660, at *4 (N.D. Tex. Oct. 30, 2020) (citing *Horton v. Cockrell*, 70 F.3d 397, 400-01 (5th Cir. 1995)). "To state a constitutional claim for failure to protect, a plaintiff must show: (1) that [she] was subjected to conditions posing a substantial risk of serious harm; and (2) prison officials were deliberately indifferent to [her] need for protection." *Wood*, 2020 WL 7121660, at *4 (citing *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995)). Deliberate indifference "is an extremely high standard to meet" (*Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), and prison officials act with such indifference only if they know an inmate faces a substantial risk of serious harm and they disregard that risk by failing to take reasonable measures to alleviate it. *See Farmer*, 511 U.S. at 837. "Consequently, officials' failure to alleviate a risk they should have perceived, but did not, does not constitute deliberate indifference." *Wood*, 2020 WL 7121660, at *4 (citing *Farmer*, 511 U.S. at 837-38). Instead, the inmate must show that the official actually

6

knew of and disregarded the excessive risk to inmate safety. *Id.* (citing *Farmer*, 511 U.S. at 837). Thus, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. The law, however, does not expect or require that prison officials prevent all inmate-on-inmate violence. *See Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003). "[A]nd mere negligence in failing to protect a prisoner from assault does not establish a constitutional violation." *See Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990).

   In the failure-to-protect context, the subjective-knowledge-of-harm prong may be met when an inmate informs a correctional officer about a specific fear of assault and is then assaulted. *See B. Braxton/Obed-Edom v. City of New York*, 368 F.Supp.3d 729, 738 (S.D.N.Y. 2019) (citing *Francis v. City of New York*, 2018 WL 4659478, at *4 (S.D.N.Y. Aug. 21, 2018)). Further, a factfinder could, under the appropriate facts, determine that a prison official knew of the risk simply because of its obviousness. *Farmer*, 511 U.S. at 842.

   Solis's allegations here, however, fail to make out a plausible case of subjective deliberate indifference against Defendant Barber and John Doe 1. First, Solis frequently characterizes the actions of these Defendants as merely negligent. ECF No. 3 at 3 ("The negligence of [Barber] allowed Solis to be assaulted."); *id.* at 4 ("Unknow [sic] Individual was negligent for not

securing inmate . . . who forcibly assaulted Rene Solis . . . ); ECF No. 15 at 3

(""Barber/Unknown staff in charge of me and other inmate . . . were

negligent in failure to act to provide Reasonable Protection/Safety. . . .").

Further, to the extent Solis alleges deliberate indifference, she relies

principally upon the following allegations to establish it: (1) that these

Defendants failed to follow rules, regulations, and policy which dictated that

"all staff must be handcuffed and supervised" in the Special Custody Unit,

and (2) that Solis is a transgendered inmate who "looks female to any naked

eye."[1] *See* ECF No. 15 at 1-2. But the failure of a correctional officer to follow

rules and regulations does not, alone, establish deliberate indifference. *See*

*Thompson v. AVC Correctional Center Staff*, 2013 WL 3778911, at *3 (W.D.

La. July 17, 2013) (dismissing a failure-to-protect claim in which the plaintiff

urged that correctional officers failed to protect him from an assault by

another inmate and were deliberately indifferent to a serious risk of harm

because they left the plaintiff and assailant together and unattended in

violation of prison policy, noting that "a prison official's failure to follow the

prison's own policies does not, itself, result in a constitutional violation")

(citing *Richardson v. Thorton*, 299 F. App'x. 461, 462-63 (5th Cir. 2008)

---

[1] Somewhat in tension with this allegation is Solis's contention that certain
Defendants are liable for failing to "alert" others of Solis's transgender
status. *See* Doc. 15 at 3. However, the Court, liberally construing Solis's
complaint, conducts its deliberate indifference analysis with the assumption
that Solis displayed feminine characteristics.

("The failure of the prison to follow its own policies . . . is not sufficient to make out a civil rights claim."); *Sandoval v. Fox*, 135 F. App'x. 691, 691-92 (5th Cir. 2005) ("The mere failure to comply with prison rules and regulations does not, without more, give rise to a constitutional violation.")).

Here, the mere fact that Defendant Barber left Solis unsupervised in alleged violation of prison regulations does not demonstrate that he harbored a subjective knowledge that Solis faced a substantial risk of serious harm. Indeed, Solis does not allege that Defendant Barber knew that another inmate was in the area, much less a high-security inmate like the one who assaulted her. The same is true for John Doe 1—the guard allegedly responsible for the high-security inmate's supervision. That he left the high-security inmate alone and uncuffed in violation of prison policy does not mean that he had subjective knowledge of the potential risk of serious bodily harm to Solis. Solis does not allege, for example, that John Doe 1 knew that Solis was in the area, that the high-security inmate had a propensity for assaulting other inmates, and that John Doe 1 nevertheless left the high-risk area uncuffed and unsupervised in Solis's proximity.

Solis suggests that her transgendered status also bears on the deliberate indifference inquiry. However, "the mere fact that [Solis] is transgender is insufficient to show" liability under the U.S. Constitution for any assault Solis experienced. *Cox v. Nobles*, 2020 WL 1541698, at *6 (S.D. Ga. March 31, 2020) (citing *Green v. Hooks*, 2017 WL 1078646, at *10 (S.D.

Ga. March 21, 2017), *affirmed*, 798 F. App'x. 411 (11th Cir. 2020); *Jacoby v. Carter*, 2017 WL 2962776, at *20 (N.D. Ala. May 1, 2017) ("[T]he plaintiff may not rely solely on his claims that he is a feminine, gay, smaller size white male to establish deliberate indifference . . . . Rather, . . . the plaintiff must demonstrate specific facts to show that each of the named defendants knew that the plaintiff was at risk of serious harm and took no actions to alleviate that risk." (internal quotation marks and citation omitted), *rep. and rec. adopted*, 2017 WL 2957822 (July 11, 2017); *Diamond v. Owens*, 131 F.Supp.3d 1346, 1376-78 (M.D. Ga. 2015) (finding the complaint plausibly showed the officers' deliberate indifference based not just on the plaintiff's transgender status or Prison Rape Elimination Act standards, but also the officers' knowledge of repeated sexual assaults and being told by a doctor that the plaintiff was highly vulnerable to sexual assaults at the prison "given its population of violent offenders").

When courts have found failure-to-protect claims involving transgender inmates cognizable, the circumstances differ from the allegations that Solis presents here. For example, in *Zollicoffer v. Livingston*, 169 F. Supp. 3d 687 (S.D. Tex. 2016), the court refused to dismiss a transgender inmate's failure-to-protect claim involving sexual assault in which the inmate was housed in general population despite ample evidence, known to the defendant warden, that the inmate faced a serious risk of sexual assault. The inmate there alleged that she had been the victim

of over a dozen rapes, assaults, and forced sexual relationships by other inmates within the TDCJ. *See id.* at 689. The inmate reported these incidents to officials, but they did "little." *Id.* Further, the court looked to Bureau of Justice Statistics to find that TDCJ prisons often reported high levels of sexual abuse and that transgender inmates in particular face a high risk of sexual assault. *Id.* at 690-91. And the plaintiff there alleged that the defendant was particularly aware of these risks, as the Department of Justice's Review Panel on Prison Rape called him specifically to discuss the sexual assault statistics at TDCJ facilities, and the defendant also personally participated in hearings on the Prison Rape Elimination Act by submitting comments and providing documents used in drafting the legislation. *Id.* at 691. The court also noted that, generally, "[t]he vulnerability of transgender prisoners to sexual abuse is no secret." *Id. See also, Farmer*, 511 U.S. 825 (vacating grant of summary judgment to prison officials on failure-to-protect claim when transgender plaintiff with feminine  characteristics was attacked after she was transferred to a facility and placed in the general population even though defendants knew the facility had a history of violent inmates and plaintiff would be particularly vulnerable); *Green v. Bowles*, 361 F.3d 290, (6th Cir. 2004) (reversing district court's grant of summary judgment to defendant on failure-to-protect claim when transgender plaintiff with feminine characteristics was brutally assaulted when the defendant knew that transgender inmates were at greater risk of attack,

11

plaintiff had already been removed from general population because of that risk, and was housed with an inmate known to be predatory); *Doe v. District of Columbia*, 215 F.Supp.3d 62, 76-78 (D.D.C. 2016) (refusing summary judgment on failure-to-protect claim involving the rape of a transgender inmate where jury could find the defendants "knew the risks of a leaving a transgender woman alone in a cell with a male inmate for an extended period of time").

Here, unlike cases like *Zollicoffer*, Solis has not alleged any facts showing previous assaults against her or transgender inmates at the prison or the dangers faced by transgender inmates at the Dallas County Jail generally, much less under circumstances like those at issue here. Also distinguishing this case from those referenced above is the fact that Solis does not complain about being assaulted because of an indefinite assignment to general population or being housed with a known, dangerous inmate for a prolonged period of time.

Instead, Solis's claim is that she was left unattended for an unspecified duration of time outside a medical station where she was physically assaulted. Based on Solis's allegations, the Court is unable to conclude that the risk of harm to her was obvious. As for Defendant Barber, it is unclear how long he left Solis alone, whether similar incidents had occurred involving transgender prisoners (and if so, whether he was aware of them), and whether he knew how likely it was that Solis would come into contact

with other, unsupervised inmates. Solis does not allege that Defendant Barber knew of the presence of the high-security inmate, much less that the high-security inmate was also unattended, uncuffed, and likely to assault Solis.

And as for John Doe 1, Solis does not allege that he knew that Solis was in the area or any other facts from which the Court could reasonably infer that he knew that the high-security inmate was especially likely to attack Solis. At bottom, the Court is left only with the fact that Solis is transgender and that Defendant Barber and John Doe 1 failed to follow regulations. For the reasons discussed above, while such facts may be pertinent to the deliberate indifference inquiry, they fall short of stating a failure-to-protect claim. Accordingly, Solis's failure-to-protect claims against Defendant Barber and John Doe 1 should be dismissed.

B.      <u>Solis fails to state a First Amendment Access-to-the-Court claim or a Fourteenth Amendment Due Process claim.</u>

Solis asserts that Defendant Cox conspired with "all investigating officers" to ignore her grievance related to the assault and suppressed "information of credibility of eyewitnesses, statements, video camera, [and] medical reports of injuries." *See* ECF No. 15 at 3.

Solis frames the failure-to-respond-to-her-grievance issue as one implicating her right to access the courts. *See id.* "[T]he right of access to the courts is an aspect of the First Amendment right to petition the

Government for redress of grievances." *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 741 (1983). "Access-to-court claims are typically found in the context of prisoner litigation." *Barela v. Underwood*, 2019 WL 4648262, at *6 (N.D. Tex. July 30, 2019), *rep. and rec. adopted* 2019 WL 4648262 (N.D. Tex. Aug. 6, 2019) (citations omitted). To succeed on an access-to-courts claim, a plaintiff must show that she lost an actionable claim or was prevented from presenting such a claim because of the alleged denial. *See Lewis v. Casey*, 518 U.S. 343, 353 (1996); *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996) (holding that to state a sufficient claim of denial of access to the courts, plaintiff must demonstrate that his position as a litigant was prejudiced as a direct result of the denial of access). The "injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 353. "Rather, a plaintiff must demonstrate that the lack of access has prevented [her] from filing or caused [her] to lose a pending case that attacks either [her] conviction or seeks to vindicate basic constitutional rights in a civil rights action." *Barela*, 2019 WL 4648262, at *6 (quoting *Lewis*, 518 U.S. at 353-54 (internal quotation marks omitted) (citation omitted)). "This requires a plaintiff to allege, at a minimum, that [her] ability to pursue a nonfrivolous, arguable [ ] claim was hindered." *Barela*, 2019 WL 4648262, at *6 (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing, in turn, *Lewis*, 518 U.S. at 353).

14

Here, Solis "cannot state a First Amendment claim for denial of access to courts because [s]he has alleged nothing to suggest [s]he was actually prevented from presenting . . . [her] underlying claims to this [C]ourt." *West v. Putman*, 2018 WL 4211749, at *4 (S.D. Tex. Apr. 12, 2018). The mishandling of the grievance process by a prison official—though it may excuse exhaustion requirements—"does not give rise to a First Amendment claim for denial of access to the courts." *Id.* (citing *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994)). "Because [Defendant Cox's] alleged action of refusing to [respond to Solis's grievance] 'did not deprive [Solis] of [her] ability to bring [her] underlying constitutional claims in federal court,'" Solis has failed to state a cognizable access-to-courts claim under the First Amendment. *Barela*, 2019 WL 4648262, at *7 (citing *West*, 2018 WL 4211749, at *4 (citing, in turn, *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)).

Finally, to the extent that Solis claims Defendant Wideman (or any other Defendant) violated her due process rights by suppressing evidence related to the assault, the Court finds that such a claim should be rejected. *See* ECF No. 15 at 3. The allegation is simply a conclusion with no supporting facts. The Court need not consider conclusory allegations for purposes of screening.

C.    <u>Solis fails to state a claim against Defendant Wideman or John</u>
<u>Doe 2.</u>

In her complaint, Solis alleges that Defendant Wideman is liable because it is his duty to make sure that Defendant Barber did his job and to "assure the inmates are all accounted for and secure." ECF No. 3 at 4. In her responses to the MJQ, Solis clarifies that Defendant Wideman's "supervision over [Defendant] Barber" should have alerted him that more reasonable protection was necessary for Solis's transport. ECF No. 15 at 6. Solis also claims that Defendant Wideman discriminated against Solis "on sex" by failing to assign an officer with "transgender custody/supervision" to transport her. *Id.* Solis also includes a claim against an unidentified John Doe 2, who, Solis contends, was "responsible for assuring officer Barber and other officers did their jobs and assured Rene Solis' safety." ECF No. 3 at 4.

"Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). A supervisory official may be held liable under section 1983 only if "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 435 (5th Cir. 2008). "In order to establish supervisory liability for constitutional violations committed by subordinate employees, plaintiffs must show that the

supervisor act[ed], or fail[ed] to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (alterations in original) (citation omitted). In this context, a plaintiff can prove deliberate indifference by showing "a pattern of violations and that the inadequate training or supervision is 'obvious and obviously likely to result in a constitutional violation.'" *Brown v. Callahan*, 623 F.3d 249, 255 (5th Cir. 2010) (quoting *Estate of Davis v. City of North Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)).

Solis's failure-to-supervise claims against Defendant Wideman and John Doe 2 fail because she does not plead the requisite facts to show deliberate indifference. She does not allege a pattern of similar incidents with Defendant Barber—or anyone else at the Dallas County Jail—involving assault on transgender inmates. Indeed, Solis presents no facts showing that either of these Defendants had a subjective awareness of a serious risk of harm but failed to take any measures to abate it, claiming instead that Defendant Wideman's actions amounted to "negligent supervision." *See* ECF No. 15 at 6.

Nor does Solis plead sufficient facts to make out an equal protection claim. "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must either allege that (a) 'a state actor intentionally discriminated against [her] because of membership in a protected class [,]'" *Williams v. Bramer*,

17

180 F.3d 699, 705 (5th Cir. 1999) (citation omitted), or (b) she has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Solis appears to claim, generally, that she was discriminated against because of her transgender status. However, she supplies no factual allegations to support this claim. It is conclusory, and the Court need not consider it for purposes of screening. *See McDavid v. Brown*, 2010 WL 3730182, at *2 (N.D. Tex. July 27, 2010) ("Further, conclusory allegations are insufficient to prevent the dismissal of a section 1983 action.") (citing *Mills v. Criminal Dist. Court No. 3*, 837 F.2d 677, 679 (5th Cir. 1988)).

Further, to establish intentional or purposeful discrimination for equal protection purposes, the plaintiff must allege that similarly situated persons have been treated differently. *See B. Braxton/Obed-Edom*, 368 F.Supp.3d at 740 (dismissing transgender prisoner's equal protection claim when the prisoner failed to allege facts regarding similarly situated prisoners who were treated differently) (citation omitted). But Solis does not make that allegation here, frustrating her equal protection claim, to the extent that she intends to assert one.

   D.   <u>Solis fails to state a claim against Sheriff Brown.</u>

Solis purports to sue Sheriff Marian Brown in both her individual and official capacities. As best the Court can tell, Solis claims that Sheriff Brown:

(1) failed to ensure that her subordinate officers were properly trained, (2) did not provide "full information on Solis's transgender status," (3) acted with deliberate indifference in failing to ensure that Solis was properly transported, and (4) hired negligent and discriminatory employees. *See* ECF No. 15 at 7.

"[A]n official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Turner v. Houma Mun. Fire & Police Civ. Serv. Bd.*, 229 F.3d 478, 484 (5th Cir. 2000) (citation omitted). So here, Solis's suit against Sheriff Brown in her official capacity is a suit against Dallas County.

"A municipality may be held liable for federal civil rights violations under 42 U.S.C. § 1983 if its policies or customs cause a constitutional tort." *Morris v. Dallas County*, 960 F.Supp.2d 665, 684 (N.D. Tex. 2013) (citing *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978)). To state a municipality liability claim, the plaintiff must allege that there was a policymaker, that a policy or custom existed, and that such policy or custom was the cause in fact or moving force behind a constitutional violation. *See Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.), *cert denied*, 534 U.S. 820 (2001). An official policy may be either a written policy or a persistent widespread practice of municipal officials and employees which, although not an authorized or officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents

municipal policy. *Morris*, 960 F.Supp.2d at 683; (citing *Lawson v. Dallas County*, 286 F.3d 257, 263 (5th Cir. 2002)) (further citation omitted). "There must be a link between the policy and the constitutional violation, and the policy must be maintained with an objective deliberate indifference to a constitutionally protected right." *Morris*, 960 F.Supp.2d at 684 (citation omitted).

   "Failure to train may be a policy for purposes of 42 U.S.C. § 1983 only if such failure 'reflects a deliberate or conscious choice by a municipality.'" *Id.* (internal quotation marks omitted) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989)). To prevail on a failure to train claim, the plaintiff must show (1) that the county's training procedures were inadequate; (2) that the municipality was deliberately indifferent in adopting its training policy; and (3) that the inadequate training policy directly caused the constitutional deprivations in question. *See World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 756 (5th Cir. 2009). "It must be specifically alleged how a training program was defective." *Morris*, 960 F.Supp.2d at 685. (citing *Roberts v. Town of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)). "'Failure to train' claims are most commonly premised on a pattern of incidents in which citizens were injured and which show that failure to train was an official policy of the municipality." *Morris*, 960 F.Supp.2d at 685 (citations omitted). "Although not impossible, it is very difficult to make a showing of deliberate

indifference based upon a single incident." *Id.* (citing *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010)).

Based on those standards, Solis fails to state an official capacity claim against Sheriff Brown. Her claim appears to be premised upon Sheriff Brown's supposed failure to train and failure to hire competent, non-discriminatory employees. But Solis fails to allege a specific defect in the county training program and hiring standards. Nor does she plead a pattern of similar incidents that could show the county's deliberate indifference to the deprivation of constitutional rights. Therefore, she has failed to plead an official capacity claim against Sheriff Brown.

The same is true for Solis's individual capacity supervisory liability claims. Solis claims that Sheriff Brown acted with deliberate indifference in failing to ensure her safe transportation, but she does not provide any factual support for this conclusory allegation. And as for the failure-to-train and failure-to-hire claims, just as in the municipality liability context, these claims fail because Solis has not identified a specific defect in Sheriff Brown's training and hiring program and because Solis fails to support her claims by alleging a pattern of similar constitutional violations. The supervisory liability failure-to-train and failure-to-hire claims against Sheriff Brown in her individual capacity should likewise be dismissed.

E.    Solis's section 1983 claim against the high-security inmate is not cognizable.

Solis also sues the inmate who assaulted her, presumably under section 1983. But to state a cause of action under section 1983, the plaintiff must allege that the person who deprived her of a federal right was acting under color of law. *Cinel v. Connick*, 15 F.3d 1338, 1342 (5th Cir. 1994). And Solis has alleged no facts to support a claim that her fellow inmate's conduct is attributable to the state in any way. Thus, the high-security inmate is not a state actor, and Solis's section 1983 claim(s) against him should be dismissed on that basis. *See Batiste v. Gusman*, 2013 WL 6095833, at *3 (E.D. La. Nov. 20, 2013) ("It is well settled that an inmate involved in a prison fight is not a person acting under color of state law as required for liability under § 1983.").

F.    Solis's claim against the United States Marshal under the FTCA is not cognizable.

In her responses to the MJQ, Solis claims that the United States Marshal is liable under the FTCA for conspiring "against [her] transgender status by placing [her] in the supervision of Dallas County Jail employees without notification that [she] was transgender." ECF No. 15 at 8. However, this claim is not cognizable under the FTCA, which only authorizes suits against the United States—not federal agencies. And it should be dismissed on that basis. *See Galvin v. Occupational Safety & Health Admin.*, 860 F.2d 181, 183 (5th Cir. 1988).

G.     The Court should decline to exercise subject matter jurisdiction over Solis's Texas Tort Claims Act claim.

Finally, Solis appears to assert a claim under the Texas Tort Claims Act (TTCA) against "all Dallas County Jail employees." ECF No. 15 at 4. Solis apparently seeks to invoke the supplemental jurisdiction of the Court. Title 28 U.S.C. § 1367 codifies the supplemental jurisdiction principles, and subsection (a) of the statute provides, in relevant part, that:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a).

Subsection (b) is inapplicable to this case, as it deals with actions filed under diversity jurisdiction. *See id.* § 1367(b). Subsection (c) provides:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1)     The claim raises a novel or complex issue of State law,
>
> (2)     the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3)     the district court has dismissed all claims over which it has original jurisdiction, or

> (4)    in exceptional circumstances, there are compelling
>          reasons for declining jurisdiction.

§ 1367(c).

Here, Solis's 42 U.S.C. § 1983 claims and her claim under the FTCA fail. Thus, the undersigned recommends declining to exercise jurisdiction over any TTCA claim, as the general rule in the Fifth Circuit directs district courts to decline to exercise jurisdiction over supplemental state law claims when the district court has dismissed all federal claims from a cause before trial. *See Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999).

Finally, a *pro se* plaintiff should ordinarily be granted the opportunity to amend his complaint prior to dismissal but leave to amend is not required when a plaintiff "has already pleaded his 'best case.'" *Brewster v. Dretke*, 587 F.3d 764, 77-68 (5th Cir. 2009). Here, because Solis already responded to a questionnaire, further leave to amend is not necessary, and her claims may be dismissed with prejudice. *See, e.g., Nixon v. Abbott*, 589 F.App'x. 279 (5th Cir. 2015) (per curiam) ("Contrary to Nixon's argument, he was given the opportunity to amend his complaint in his responses to the magistrate judge's questionnaire, which has been recognized as an acceptable method for a pro se litigant to develop the factual basis for his complaint.") (citation omitted); *Richardson v. County of Dallas*, 2018 WL 1156004, at *5 (N.D. Tex. Feb. 7, 2018) (noting that action should be dismissed with prejudice where the plaintiff had been afforded the

opportunity to plead his best case through his verified answers to the screening questionnaire) (citations omitted).

## Recommendation

The Court should dismiss Solis's complaint under 28 U.S.C. §§ 1915A and 1915(e)(2)B) for failure to state a claim upon which relief can be granted.

Signed June 30, 2021.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).